## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LANDSCAPE IMAGES LTD.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 22-1324**

**IBERIABANK CORPORATION, ET AL.**           **SECTION: D (4)**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Complaint for Damages filed by IberiaBank and First Horizon Bank ("Defendants").[1]  Plaintiff Landscape Images, Ltd. opposes the Motion,[2] and the Defendants have filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and **DENIED in part.**

## I.    FACTUAL and PROCEDURAL BACKGROUND

Plaintiff, a customer of IberiaBank and First Horizon Bank (collectively, "Defendants"), filed this action on May 12, 2022 alleging violations of the Equal Credit Opportunity Act and 12 C.F.R. Part 1002 of the Consumer Credit Protection Act.[4]  Plaintiff alleges that on or about April 1, 2021, Defendants announced the opening of their portal through which customers could submit applications for loans pursuant to the United States Small Business Administration Paycheck Protection

---

[1] R. Doc. 8. The Court notes that Defendant(s) advise that, "IberiaBank Corporation was improperly named as a defendant in this action.  First Horizon Bank is the successor by merger to IberiaBank. . . The proper defendant should therefore be First Horizon Bank, successor by merger to IberiaBank." *See* R. Doc. 8-1, n.1. Since both entities were named in the Complaint, the Court will refer to them as "Defendants."

[2] R. Doc. 12.

[3] R. Doc. 15.

[4] R. Doc. 1.

Program.[5]  On April 2, 2021, Plaintiff submitted its application for a loan.[6]  On May 13, 2021, having not heard from Defendants, Plaintiff contacted Defendants and was advised that the funding for the Program had been depleted.[7]  Plaintiff further learned that by the time its application was processed the funds had been depleted.[8]  Plaintiff contends that Defendants violated the Equal Credit Opportunity Act and 12 C.F.R. Part 1002 of the Consumer Credit Protection Act.[9]  Plaintiff further alleges state law claims of negligence by the Defendants' failure to timely respond and process the application and failure to properly train employees.[10]

Defendants raise two main arguments in their Motion to Dismiss: (1) that the matter is governed by the Louisiana Credit Agreement Statute[11] (the "LCAS"), which expressly prohibits actions against a creditor based on credit agreements that have not been reduced to writing; and, (2) that Plaintiff has failed to state sufficient facts to state a claim against Defendants under the Equal Credit Opportunity Act.[12]  Regarding its first argument, Defendants contend that the Louisiana Credit Agreement Statute, La. R.S. 6:1122, defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit or make any financial accommodation."[13]  Defendants further assert that a credit agreement

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Referred to by the parties as both "the Louisiana Credit Agreement Statute" and "Louisiana Credit Agreement Act."
[12] R. Doc. 8-1.
[13] *Id.*

must be reduced to writing, express consideration, include relevant terms and conditions, and be signed by the creditor and debtor.[14]  Defendants point out that the Complaint fails to allege that a written, enforceable credit agreement was ever finalized between the parties and that, instead, Plaintiff only alleges that it applied to obtain a loan.[15]  Defendants contend that its Motion to Dismiss should be granted because the LCAS and subsequent jurisprudence make clear that the writing is the "sine qua non of asserting an action on a credit agreement."[16]

Defendants further contend that Plaintiff's claims of violations of the Equal Credit Opportunity Act and "Regulation B" of the Consumer Credit Protection Act fail since Plaintiff has failed to identify any provision of Regulation B that Defendants purportedly violated.[17]  Defendants contend that, assuming *arguendo* that Plaintiff is claiming a violation of 12 C.F.R. § 1002.9(a)(1), that portion of the regulation provides that, "[a] creditor shall notify an applicant of action taken within . . . 30 days after receiving a completed application . . . ."[18]  Defendants assert that the regulation defines the term "completed application," and that Plaintiff never alleges that it submitted a "completed application."[19]  Finally, Defendants advise that the 30-day time period set forth in 12 C.F.R. § 1002.9(a)(1) does not apply to a business with gross revenues in excess of $1 million in its preceding fiscal year, and Plaintiff has

---

[14] *Id.*

[15] *Id.*

[16] *Id.* (citing *Fortenberry v. Hibernia Nat. Bank,* 37,266 (La. App. 2 Cir. 8/20/03), 852 So.2d 1221, 1229).

[17] R. Doc. 8-1.

[18] *Id.*

[19] *Id.*

failed to allege any facts to suggest that it has less than $1 million in gross revenue in the preceding year.[20]

Plaintiff opposes the Motion, asserting that the Complaint "sufficiently alleges the existence of a signed written agreement between Plaintiff and Defendants, with expressed consideration, which sets forth the terms by which Defendants would process Plaintiff's application for a loan pursuant to the United Sates Small Business Administration's 'Paycheck Protection Program.'"[21]  Plaintiff attaches as exhibits the purported solicitation from Defendants for loan applications, as well as an email exchange between Plaintiff's representative and Defendants on the status of the loan application.[22]  Plaintiff spends several pages of its Opposition brief cutting and pasting large portions of its Complaint to support its position that it adequately stated a claim for relief.  In response to Defendants' argument that the LCAS applies in this matter, Plaintiff argues that the definition of "credit agreement" requires "an agreement to . . . make any other financial accommodation."[23]  Relying on that language, Plaintiff contends that Defendants' solicitation and acceptance of loan application documents for processing constitutes "an agreement to  . . . make any other financial accommodation," and thus Plaintiff has brought suit based on a "credit agreement."[24]

---

[20] *Id.*
[21] R. Doc. 12.
[22] *Id.*
[23] *Id.*
[24] *Id.*

In response, Defendants note that Plaintiff does not dispute that the LCAS applies. Relying on the jurisprudence cited in its brief in support of its Motion, Defendants again argue that the minimal communication between the parties does not amount to a "credit agreement" under the law.[25] Defendants maintain that, "[t]o hold that applying for a loan perfects a credit agreement would turn the Louisiana Credit Agreement Statute on its head."[26] Defendants further claim that Plaintiff failed to rebut its argument for dismissal of its Equal Credit Opportunity Act claim.[27]

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[28] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[31]

---

[25] R. Doc. 15.
[26] *Id.*
[27] *Id.*
[28] Fed. R. Civ. P. 12(b)(6).
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[30] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).
[31] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[32]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[33] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[34]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[35]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[36]

## III.   ANALYSIS

Before conducting its analysis, the Court addresses the information considered by the Court.  Plaintiff attached ten exhibits to its Opposition brief.  As set forth above, in deciding a Rule 12(b)(6) motion, the Court is generally restricted to the pleadings but may consider documents outside of the complaint when they are attached to the motion, referenced in the complaint, and central to the plaintiff's claims.  While some of Plaintiff's exhibits attached to its Opposition brief are referenced in the Complaint, others were not.  Further, none of the exhibits were

---

[32] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[33] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[34] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[35] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

[36] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

attached to the Complaint or to Defendants' Motion.  Finally, several of the exhibits

are not central to Plaintiff's claims.  Therefore, the Court determines that the exhibits

are not appropriate to be considered by the Court in its analysis.

### A.      Plaintiff has failed to assert a plausible state law claim.

Defendants primarily rely on the Louisiana Credit Agreement Act to support

its position that Plaintiff's state law claims fail.

The LCAS, La. R.S. 6:1121, states:

> For purposes of this Chapter, the following terms shall
> have the following meanings
> (1) "Credit agreement" means an agreement to lend or
> forbear repayment of money or goods or to otherwise
> extend credit, or make any other financial accommodation.
> (2) "Creditor" means a financial institution or any other
> type of creditor that extends credit or extends a financial
> accommodation under a credit agreement with a debtor.
> (3) "Debtor" means a person or entity that obtains credit or
> seeks a credit agreement with a creditor or who owes
> money to a creditor.
> (4) "Financial institution" means a bank, savings and loan
> association, savings banks, or credit union authorized to
> transact business in this state.

Further in the LCAS it states that:

> A debtor shall not maintain an action on a credit
> agreement unless the agreement is in writing, expresses
> consideration, sets for the relevant terms and conditions,
> and is signed by the creditor and the debtor.[37]

Finally, La. R. S. 6:1123 of the LCAS provides that:

> the following actions "shall not give rise to a claim that a
> new credit agreement is created, unless the agreement
> satisfies the requirements of [La.] R.S. 6:1122":
> (1) The rendering of financial or other advice by a creditor
> to a debtor.

---

[37] La. R.S. 6:1122.

> (2) The consultation by a creditor with a debtor.
> (3) The agreement of a creditor to take or not to take certain
> actions, such as entering into a new credit agreement,
> forbearing from exercising remedies under a prior credit
> agreement, or extending installments due under a prior
> credit agreement.[38]

Plaintiff does not contest  that the LCAS applies in this matter.  Instead, Plaintiff contends that "Defendants' solicitation and acceptance of loan application documents for processing in connection with the SBA PPP constitutes" a "credit agreement" as that term is defined under the LCAS.[39]

In *Jesco Construction Corporation v. Nationsbank Corporation,*[40]  the Louisiana Supreme Court accepted the certified question from the United States Fifth Circuit Court of Appeals as to whether the LCAS precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery.  The Supreme Court answered the question in the affirmative stating:

> As we stated in *Whitney*, the primary purpose of credit
> agreement statutes is to prevent potential borrowers from
> bringing claims against lenders based upon oral
> agreements.  To allow debtors to skirt the Louisiana Credit
> Agreement Statute by bringing actions other than breach
> of contract, but which are based upon oral agreements to
> lend money, would thwart the intent of the legislature and
> render the entire statute meaningless.  We answer the
> question certified to us in the affirmative.  The Louisiana
> Credit Agreement Statute precludes all actions for

---

[38] La. R.S. 6:1123.
[39] R. Doc. 12 at p. 14.
[40] 2002-0057 (La. 10/25/02), 830 So.2d 989.

> damages arising from oral credit agreements, regardless of
> the legal theory of recovery asserted.[41]

As set forth in some detail in Defendants' Motion, numerous courts have reached the same conclusion.[42]  This Court follows suit.

The Court recognizes that Plaintiff in this matter does not even assert that there was an oral agreement; instead, Plaintiff relies on a solicitation from the bank and Plaintiff's response to that solicitation.  In *Fortenberry v. Hibernia National Bank*, relied on by Defendants in support of their Motion, the plaintiff had previously obtained a crop loan from the bank and entered into discussions to obtain a similar loan for the following year.[43]  A bank officer advised the plaintiff that the bank loan had been approved, made a personal loan to the plaintiff, and then later froze his bank account and denied the loan.  The plaintiff filed suit claiming the bank had a pattern of gross negligence or intentional negligence in handling loan application.  The plaintiff also claimed the bank committed fraudulent conduct.  The defendant sought dismissal of the claims, relying on the failure of any agreement to comply with the Louisiana Credit Agreement Act and the trial court granted that dismissal.  On appeal, and after a detailed review of the LCAS and jurisprudence, the court of appeals affirmed the trial court's dismissal, holding that:

> Based upon the jurisprudence discussed above, we find
> that the LCAS precludes causes of action arising from oral
> credit agreements, regardless of the theory of recovery,
> including fraud.  The LCAS makes a writing the sine qua
> non of asserting an action on a credit agreement.  Because
> there is no such writing in the present case, the plaintiffs

---

[41] *Id.* at 992 (referencing *Whitney Nat'l Bank v. Rockwell*, 94-3049 (La. 10/16/95), 661 So.2d 1325).
[42] *See* R. Doc. 8-1 n.3.
[43] 37,266 (La. App. 2 Cir. 8/20/03), 852 So.2d 1221, 1229.

>   have no cause of actions against the bank arising from the
>   alleged failure to grant a loan.[44]

The Court notes that the evidence in *Fortenberry* included some writings between the parties, and that the plaintiff in that case also asserted claims of fraud and intentional concealment, neither of which is alleged in this case.   Notwithstanding that evidence, the trial court and court of appeals in *Fortenberry* concluded that the plaintiff had no cause of action.

In its Opposition brief, Plaintiff argues that its suit is premised on a "credit agreement" and that the credit agreement is "Defendants' solicitation and acceptance of loan application documents for processing."[45]   Plaintiff's only support for this statement is the statutory definition of "credit agreement." Plaintiff's argument, however, conflates "loan application" with "credit agreement."   Louisiana Revised Statute 6:1121 defines a "credit agreement" as an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation.[46]   Plaintiff has provided the Court with no support for its proposition that the term "loan application" is synonymous with the term "credit agreement," and the Court has found none.   The Court agrees with Defendants that, "to hold that applying for a loan perfects a credit agreement would turn the Louisiana Credit Agreement Statute on its head."[47]   In light of the clear language of the

---

[44] *Fortenberry*, 852 So.2d at 1228.
[45] R. Doc. 12.
[46] La. R.S. 6:1121.
[47] R. Doc. 15.

Louisiana Credit Agreement Statute, Plaintiff has not asserted a plausible state law claim against Defendants.

**B.    Plaintiff has failed to assert a plausible federal claim.**

The Court now turns to Plaintiff's claim regarding violations of the Equal Credit Opportunity Act and "Regulation B" of the Consumer Credit Protection Act. Defendants make several arguments in support of dismissal, including that Plaintiff has failed to identify any portion of the regulation that it contends to be at issue. Defendants then state, for argument's sake, that any claim of a violation of 12 C.F.R. § 1002.9(a)(1) fails, as that section of the regulation requires action by the creditor within 30 days after receipt of a "completed application" and Plaintiff has failed to assert that it submitted a completed application.[48]  Finally, Defendants maintain that the same section of the regulation exempts businesses with gross revenues in excess of $1 million, and Plaintiff has not made any allegation as to its gross revenue.[49]

Plaintiff only briefly addresses Defendants' arguments regarding this claim, stating that the Complaint states that Defendants did not respond for over 30 days.[50] Plaintiff does not address that this factual allegation is not tied to a violation of the Equal Credit Opportunity Act.  Plaintiff further avers that, since it was a customer of Defendants, "Defendants had reasonable information regarding whether Plaintiff was entitled to the protections of Regulation B."[51]  Plaintiff then contends that discovery will reveal further details and support.

---

[48] R. Doc. 8-1.
[49] *Id.*
[50] R. Doc. 12.
[51] *Id.*

Plaintiff's claim as it relates to a violation of the Equal Credit Opportunity Act is contained in one paragraph of the Complaint, in which it claims violations of federal statutes and regulations, as well as negligence:

> In that Defendants IberiaBank and First Horizon failed to comply with the provisions of the Equal Credit Opportunity Act, 15 U.S.C. §1691 et. seq., 12 C.F.R. Part 1002, et seq. ("Regulation B," issued by the Bureau of Consumer Financial Protection pursuant to Title VII (Equal Credit Opportunity Act) of the Consumer Credit Protection Act, as amended (15 U.S.C. §1691, et seq.), and/or other established banking industry standards.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief.[52] "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[53] The Complaint in this matter does just the opposite—it provides a formulaic recitation of the regulation, *in toto*, without attention to any specific part of the regulation. Further, it fails to provide any specific factual support for the claim. Plaintiff merely states, in a conclusory fashion, that Defendants failed to comply with the provisions of the Equal Credit Opportunity Act. Indeed, Plaintiff does not even attempt to connect the facts he does allege to his Equal Credit Opportunity Act cause of action. For argument's sake, Defendants have surmised that Plaintiff's allegation that Defendants "failed to respond to Plaintiff's application for a loan . . . within thirty (30) days of receipt of same" is in relation to or support of its claim under the Equal

---

[52] Fed. R. Civ. P. 8(a)(2).
[53] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Credit Opportunity Act.[54]  The Court does not find such a leap appropriate.  For these reasons, Plaintiff has failed to assert a plausible claim under the Equal Credit Opportunity Act.

### C.    Leave to amend.

Plaintiff has requested leave to amend its Complaint in the event that the Court finds that Plaintiff has failed to state a plausible claim.  The Court has now made that determination.

This Court will "freely give leave [to amend] when justice so requires,"[55] but leave to amend "is by no means automatic."[56]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[57]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[58]  Applying those factors here, the Court finds that any amendment regarding Plaintiff's state law claims would likely be futile in light of the requirements of the Louisiana Credit Agreement Act, La. R. S. 6:1121, *et. seq.*, and the definition of "credit agreement," which requires that such agreement be reduced to writing, express consideration, include relevant terms and conditions, and be signed by the creditor and debtor.

---

[54] R. Doc. 8-1 (*citing* R. Doc. 1).
[55] Fed. R. Civ. P. 15(a).
[56] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[57] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[58] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

The Court reaches the opposite conclusion as to Plaintiff's federal law claim. Defendants have argued, and the Court agrees, that Plaintiff has failed to assert a plausible claim under the Equal Credit Opportunity Act.  For the reasons stated addressing that claim, the Court determines that granting leave to amend is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Dismiss Complaint for Damages filed by IberiaBank and First Horizon Bank [59] is **GRANTED in part and DENIED in part.**  The Motion is **GRANTED** to the extent that Defendants seek dismissal of Plaintiff's state law claims and those claims are **dismissed with prejudice**.  The Motion is **DENIED WITHOUT PREJUDICE** as to Plaintiff's claims asserted under the Equal Credit Opportunity Act and 12 C.F.R. Part 1002 of the Consumer Credit Protection Act**.**

**IT IS FURTHER ORDERED** that Landscape Images, Ltd. shall have **fourteen (14) days** from the date of this Order, if appropriate, to file a comprehensive, amended complaint, without further leave of court, to address the deficiencies identified in this Order. Failure to do so will respond in the dismissal of all claim.

New Orleans, Louisiana, March 31, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[59] R. Doc. 8.