# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LANDSCAPE IMAGES LTD.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1324** |
| **IBERIABANK CORPORATION, ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss First Supplemental and Amended Complaint for Damages, filed by IberiaBank Corporation ("IberiaBank") and First Horizon Bank ("First Horizon") (collectively, "Defendants").[1] Landscape Images, Ltd. (hereafter, "Plaintiff") opposes the Motion,[2] and Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.   FACTUAL and PROCEDURAL BACKGROUND[4]

Plaintiff, a customer of IberiaBank and First Horizon, initially filed this lawsuit on May 12, 2022, alleging that Defendants failed to timely process its application for a Paycheck Protection Program ("PPP") loan in 2021 before the Small Business Administration ("SBA") ran out of available funds.[5] Plaintiff alleged that Defendants' actions violated state law, as well as the Equal Credit Opportunity Act,

---

[1] R. Doc. 35. Defendants assert that IberiaBank Corporation was improperly named as a defendant in this action, and that First Horizon Bank is the proper defendant as the successor by merger to IberiaBank Corporation. *Id*. at p. 1, n.1. Since both entities were named as defendants in the Amended Complaint, the Court will refer to them collectively as "Defendants."
[2] R. Doc. 41.
[3] R. Doc. 44.
[4] The Court set forth the factual background of this case in great detail in its March 31, 2023 Order and Reasons (R. Doc. 27 at pp. 1-5) and, for the sake of brevity, it will not be repeated here.
[5] *See*, R. Doc. 1.

15 U.S.C. § 1691, *et seq.*, and "Regulation B" of the Consumer Credit Protection Act, 12 C.F.R. Part 1002, *et seq.*[6]

On August 29, 2022, Defendants filed a Motion to Dismiss, asserting that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a plausible claim for relief under Louisiana or federal law.[7] The Court issued an Order and Reasons on March 31, 2023, granting in part and denying in part Defendants' Motion to Dismiss.[8] The Court dismissed Plaintiff's state law claims with prejudice, finding that Plaintiff failed to plausibly allege the existence of a credit agreement, written or oral, and that any amendment to the Complaint would be futile because the Louisiana Credit Agreement Act, La. R.S. 6:1121, precludes any claim for damages arising from credit agreements that are not in writing.[9] The Court also found that Plaintiff failed to plausibly allege a federal claim under the Equal Credit Opportunity Act or "Regulation B" of the Consumer Credit Protection Act, both of which were cited in the Complaint as "15 U.S.C. § 1691, et seq."[10] The Court held that the Complaint provided a formulaic recitation of the regulation, *in toto*, without referencing any specific part of the regulation or providing any factual support for the claim and did not "contain a short and plain statement of the claim," as required by Fed. R. Civ. P. 8(a)(2).[11] The Court further held that Plaintiff failed to tie its factual allegations about Defendants' non-responsiveness to any violation of the Equal Credit

---

[6] *Id.* at pp. 3-4.
[7] R. Doc. 8.
[8] R. Doc. 27.
[9] *Id.* at pp. 7-11.
[10] *Id.* at p. 12 (*quoting* R. Doc. 1 at ¶ IX(a)).
[11] R. Doc. 27 at p. 12.

Opportunity Act.[12] The Court, however, granted Plaintiff leave to amend its Complaint with respect to its claim under the Equal Credit Opportunity Act.[13]

Pursuant to the Court's Order, Plaintiff filed a First Supplemental and Amended Complaint for Damages on April 13, 2023.[14] The Amended Complaint contains some of the same allegations found in Plaintiff's original Complaint, as well as additional information, including that a representative for Defendants admitted that the bank failed to timely process Plaintiff's loan application.[15] Plaintiff also attached 10 exhibits to the Amended Complaint, including communications between the parties showing that Defendants notified Plaintiff on May 13, 2021 that the SBA loan funds had been depleted.[16] Although the Court dismissed Plaintiff's state law claims with prejudice, the Amended Complaint includes allegations regarding Defendants' negligent failure to timely process Plaintiff's loan application, which are identical to the allegations contained in the original Complaint.[17] Because these claims were dismissed, the Court will only consider the allegations in the Amended Complaint regarding Plaintiff's federal claim.

While not a model of clarity, Plaintiff appears to allege that Defendants failed to comply with the notification requirements set forth in Regulation B of the Equal Credit Opportunity Act, specifically 12 C.F.R. § 1002.9(a)(3), by failing to respond to Plaintiff's loan application "within thirty (30) days or any reasonable time following

---

[12] *Id.* at pp. 12-13.
[13] *Id.* at pp. 13-14.
[14] R. Doc. 30.
[15] *Id.* at ¶¶ X-XIV.
[16] R. Docs. 30-1 through 30-10. *See*, R. Docs. 30-6, 30-7, 30-8, 30-9, 30-10.
[17] *Compare* R. Doc. 30 at ¶¶ XV & XVI *to* R. Doc. 1 at ¶ IX.

receipt of same" and by allowing the application to "'fall through the cracks.'"[18] Plaintiff alleges that Defendants failed to provide any notification because nothing was done after receiving Plaintiff's loan application. Plaintiff further asserts that Defendants' failure to timely notify Plaintiff of the action taken on its loan application "resulted in Plaintiff not being able to submit applications to other institutions prior to depletion of the PPP funds."[19]

Defendants filed the instant Motion to Dismiss on April 26, 2023, asserting that Plaintiff's Amended Complaint fails to state a viable claim for relief because Plaintiff is still asserting that Defendants were negligent in not timely processing Plaintiff's loan application.[20] According to Defendants, Plaintiff has alleged that it submitted a loan application on April 2, 2021 and was advised by Defendants on May 13, 2021 that the funds available to the bank had been depleted.[21] Defendants argue that, even assuming those allegations are true, Plaintiff does not have an actionable claim on the basis that it should have been notified regarding the status of its loan application prior to May 13, 2021. Defendants point out that 12 C.F.R. § 1002.9(a)(3), the only portion of the Equal Credit Opportunity Act or 12 C.F.R. Part 1002 of the Consumer Credit Protection Act cited by Plaintiff, contains different notification requirements depending upon whether the borrower had "gross revenues of $1 million or less in its preceding fiscal year" or "gross revenues in excess of $1 million

---

[18] R. Doc. 30 at ¶ XVI(a), (b), & (i).
[19] *Id.* at ¶ XVII.
[20] R. Doc. 35; R. Doc. 35-1 at p. 2 (*citing* R. Doc. 30 at ¶ XII).
[21] R. Doc. 35-1 at p. 2 (*citing* R. Doc. 30 at ¶¶ XII, XVI).

in its receding fiscal year."[22] Defendants assert that a creditor must notify an applicant with gross revenues of $1 million or less within "30 days after receiving a completed application," while a creditor need only notify an applicant with gross revenues of more than $1 million within "a reasonable time."[23] Defendants point out that Plaintiff fails to specify in its Amended Complaint whether it had gross revenues or more than $1 million in the year preceding its loan application.[24]

To the extent Plaintiff relies upon the 30-day period set forth in 12 C.F.R. § 1002.9(a)(1), applicable through 12 C.F.R. § 1002.9(a)(3)(i), Defendants argue that section of Regulation B does not apply because the evidence before the Court shows that Plaintiff's gross revenue in the year preceding its loan application exceeded $1 million.[25] While Plaintiff redacted information regarding its gross revenues from the loan application submitted as an exhibit to the Amended Complaint,[26] Defendants assert that the unredacted version shows that Plaintiff's gross revenue was close to $1 million for just one quarter of 2019, "demonstrating that its gross revenue for that year was in excess of $3 million."[27] As such, Defendants argue that the applicable portion of Regulation B is 12 C.F.R. § 1002.9(a)(3)(ii), which only required that Defendants notify Plaintiff within "a reasonable time" of the action taken on Plaintiff's loan application.[28] Defendants assert that they complied with that

---

[22] R. Doc. 35-1 at p. 3 (*quoting* R. Doc. 30 at ¶ VIII(i)) (internal citations omitted).
[23] R. Doc. 35-1 at p. 3 (*quoting* 12 C.F.R. § 1002.9(a)(3)(ii)) (internal quotation marks omitted).
[24] R. Doc. 35-1 at p. 3.
[25] *Id.* at pp. 4-5.
[26] *Id.* at p. 5 (*citing* R. Doc. 30-4).
[27] R. Doc. 35-1 at p. 5 (*citing* R. Doc. 35-3).
[28] R. Doc. 35-1 at pp. 5-6 (*citing* 12 C.F.R. § 1002.9(a)(3)(ii); *Stanford Tukwila Hotel Corp. v. GBC Int'l Bank*, Civ. A. No. 2:21-cv-01486-BAT, 2022 WL 17716474, at *3-5 (W.D. Wash. Dec. 15, 2022) (Tsuchida, M.J.)).

requirement. Relying upon a Compliance Aid issued by the Consumer Financial Protection Bureau, Defendants further assert that the notification requirement in 12 C.F.R. § 1002.9 does not apply until the creditor has received either a loan number from the SBA or a response from the SBA about the availability of funds.[29] Defendants contend that there is no allegation in the Amended Complaint that Defendants ever received a loan number from the SBA, and the exhibits to the Amended Complaint show that Defendants learned on May 4, 2021 that the funds allocated to it by the SBA were exhausted.[30] Thus, Defendants assert that the applicable notification timeline either never began to run or it began to run on May 4, 2021, and Plaintiff was notified of the action taken on its application within ten days.[31] Finally, to the extent Plaintiff has asserted a negligence claim against Defendants under state law, Defendants assert that such claims were previously dismissed with prejudice by the Court.[32]

Plaintiff's Opposition brief largely restates the allegations contained in the Amended Complaint.[33] Plaintiff further asserts that Defendants failed to provide timely notice of the action taken on its loan application regardless of which notification period in 12 C.F.R. § 1002.9 applies.[34] Plaintiff seems to assert both that its gross revenue is proprietary information and that "the exhibit attached to the Motion, Plaintiff's application, clearly provides Defendants information as to

---

[29] R. Doc. 35-1 at p. 7 (*citing* https://perma.cc/L4CW-4RKA).
[30] R. Doc. 35-1 at p. 7 (*citing* R. Doc. 30-8).
[31] R. Doc. 35-1 at p. 7.
[32] *Id.* at p. 8 (*citing* R. Doc. 27 at p. 13).
[33] *Compare* R. Doc. 41 at pp. 2-13 *to* R. Doc. 30 at ¶¶ V-XVIII.
[34] R. Doc. 41 at p. 13.

Plaintiff's gross revenues."[35] Without specifying which notification period in § 1002.9 applies to the facts of this case, Plaintiff asserts that the Amended Complaint and exhibits thereto show "the significant time delay, in excess of thirty (30) days, during which Defendants failed to communicate with Plaintiff regarding the pending loan application, a requirement under Regulation B acknowledged by Defendants."[36] Plaintiff also seems to assert that the meaning of "reasonable time" is not proper in the context of a Rule 12(b)(6) motion to dismiss, where reasonable discovery has not been completed, and that the case cited by Defendants to support its position on this issue is distinguishable from the facts of this case.[37] As such, Plaintiff asserts that the Motion should be denied. Alternatively, if the Court determines that Plaintiff has failed to state a plausible claim for relief, Plaintiff requests leave to amend its complaint, asserting that such amendment "will not be futile."[38]

In response, Defendants assert that Plaintiff has not substantively addressed the arguments in their Motion and Defendants maintain that Plaintiff's Amended Complaint does not state a plausible claim for relief under federal law.[39] Defendants assert that notifying Plaintiff of the action takin on its loan application within 40 days of receiving the application is not unreasonable,[40] and further "that Plaintiff is disingenuously refusing to admit that the 30-day notice period does not apply, even though Plaintiff's own exhibit to the Amended Complaint reveals that Plaintiff's

---

[35] *Id.* at p. 13 & n.19.
[36] *Id.* at p. 14.
[37] *Id.* at p. 15 (citing *Stanford Tukwila Hotel Corp. v. GBC Int'l Bank*, Civ. A. No. 2:21-cv-01486-BAT, 2022 WL 17716474 (W.D. Wash. Dec. 15, 2022)).
[38] R. Doc. 41 at p. 15.
[39] R. Doc. 44 at p. 1.
[40] *Id.* at p. 2.

revenues far exceed $1 million, with Plaintiff going so far as to conceal that information by redacting it."⁴¹ To the extent Plaintiff asserts that the issue of "reasonable time" is better resolved on summary judgment, Defendants assert that Plaintiff miscites *Stanford Tukwila Hotel Corp. v. GBC Int'l Bank*, wherein a district court denied the plaintiff's request to amend its complaint to add a claim for the alleged violation of Regulation B's notification requirement.⁴² Defendants claim that Plaintiff fails to address the Compliance Aid cited in the Motion to Dismiss, and further assert that under that guidance, the notice period either did not begin to run or it began to run on May 4, 2021.⁴³ Defendants assert that Plaintiff's request for leave to amend should be denied because the request is untimely and Plaintiff has already had ample opportunity to plead its claims.⁴⁴

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.⁴⁵ To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"⁴⁶ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

⁴¹ *Id.* at p. 4 (*citing* R. Doc. 30-4; R. Doc. 35-1 at p. 5; R. Doc. 35-3).
⁴² R. Doc. 44 at pp. 4-5 (citing *Stanford*, Civ. A. No. 2:21-cv-01486-BAT, 2022 WL 17716474, at *4-5 (W.D. Wash. Dec. 15, 2022)).
⁴³ R. Doc. 44 at p. 5.
⁴⁴ *Id.* at p. 6 (*citing* R. Doc. 38; *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002)).
⁴⁵ Fed. R. Civ. P. 12(b)(6).
⁴⁶ *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

liable for the misconduct alleged."[47] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[48]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[49] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[50] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[51] Further, "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken."[52] The Fifth Circuit has held that, in the context of a Rule 12(b)(6) motion, exhibits attached to the complaint "are part of the complaint 'for all purposes.'"[53] Additionally, courts can take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[54] A court may also consider documents outside of the complaint when they are: (1) attached to the

---

[47] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).
[48] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[49] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[50] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[51] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[52] *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).
[53] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (*citing* Fed. R. Civ. P. 10(c)).
[54] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[55]

## III. ANALYSIS

### A. Plaintiff has failed to assert a plausible claim for relief under Regulation B of the Equal Credit Opportunity Act.

As an initial matter, the Court finds that, in determining whether to grant Defendants' Motion to Dismiss, the Court can consider the exhibits attached to the Amended Complaint, which are part of the pleadings. The Court likewise finds that it can consider the unredacted loan application attached as an exhibit to the Motion to Dismiss, which is merely an unredacted version of one of the exhibits attached to the Amended Complaint.[56]

Turning to the substance of the Motion to Dismiss, Plaintiff argues that it has asserted a plausible claim based upon the Defendants' violation of the notification requirement contained in Regulation B of the Equal Credit Opportunity Act, specifically 12 C.F.R. § 1002.9(a)(3).[57] The Consumer Financial Protection Bureau ("CFPB") issued Part 1002, known as Regulation B, "pursuant to Title VII (Equal Credit Opportunity Act) of the Consumer Credit Protection Act, as amended (15 U.S.C. 1601 et seq.)."[58] The purpose of Regulation B is to "promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age," and it requires, among other things, "creditors to

---

[55] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).
[56] *Compare* R. Doc. 30-4 *to* R. Doc. 35-3.
[57] R. Doc. 30 at pp. 11-12; R. Doc. 41 at pp. 14-15.
[58] 12 C.F.R. § 1002.1(a).

notify applicants of action taken on their applications."[59]  With respect to this notification requirement, 12 C.F.R. § 1002.9(a)(3) sets forth two different time periods applicable to business credit applicants depending upon whether the business had gross revenues in excess of $1 million in its preceding fiscal year.  Section 1002.9(a)(3) provides, in pertinent part, the following:

> (3) Notification to business credit applicants.  For business credit, a creditor shall comply with the notification requirements of this section in the following manner:
>> (i) With regard to a business that had gross revenues of $1 million or less in its preceding fiscal year . . . a creditor shall comply with paragraphs (a)(1) and (2) of this section . . .
>> (ii) With regard to a business that had gross revenues in excess of $1 million in its preceding fiscal year . . . a creditor shall:
>>> (A) Notify the applicant, within a reasonable time, orally or in writing, of the action taken . . . .[60]

The Court further notes that "paragraphs (a)(1) and (2)" of 12 C.F.R. § 1002.9 provide that:

> (a) Notification of action taken, ECOA notice, and statement of specific reasons—
> (1) When notification is required.  A creditor shall notify an applicant of action taken within:
>> (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application;
>> (ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section;
>> (iii) 30 days after taking adverse action on an existing account; or
>> (iv) 90 days after notifying the applicant of a counteroffer . . . .
> (2) Content of notification when adverse action is taken.  A notification

---

[59] 12 C.F.R. § 1002.1(b).
[60] 12 C.F.R. § 1002.9(a)(3).

> given to an applicant when adverse action is taken shall be in writing and shall contain a statement of the action taken . . . .[61]

According to the notice requirements of 12 C.F.R. § 1002.9, a creditor must notify a business applicant of action taken on an application for credit within 30 days of receiving the completed application if the business applicant's gross revenue for the previous fiscal year was $1 million or less. If, however, the business applicant's gross revenue in the prior fiscal year exceeded $1 million, the creditor must notify the applicant of action taken on an application for credit "within a reasonable time." While Regulation B does not define the phrase "reasonable time,"[62] the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, suggests that a "reasonable time" may exceed 30 days.[63]

To determine whether Plaintiff has stated a plausible claim under Regulation B based upon Defendants' alleged failure to timely notify Plaintiff of the action taken on its loan application, the Court must determine which notification requirement applies to the facts of this case. Notably, Plaintiff fails to specify, in either its Amended Complaint or its Opposition brief, which notification requirement is applicable.[64] Plaintiff simultaneously alleges, in both pleadings, that Defendants "failed to respond to Plaintiff's completed application for a loan pursuant to the United States Small Business Administration Paycheck Program within thirty (30)

---

[61] 12 C.F.R. § 1002.9(a)(1) & (2).
[62] *See*, 12 C.F.R. §§ 1002.2 & 1002.9.
[63] *See,* 15 U.S.C. § 1691(d)(1) (mandating that a creditor notify the applicant of its action on an application "[w]ithin thirty days (or such *longer* reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit.").
[64] *See*, R. Doc. 30 at ¶ XVI(b) & (i); R. Doc. 41 at pp. 9-12.

days or any reasonable time following receipt of same,"[65] and that, "Defendants failed to provide Notification to Plaintiff, within a reasonable amount of time, whether and what action had been taken on his completed loan application."[66] While Plaintiff asserts in its Opposition brief that, "**Regardless of which time period applies, Plaintiff has alleged that Defendants failed to provide timely notice as required by 12 CFR §1002.9(a)**,"[67] Plaintiff also asserts that the Amended Complaint and the documents attached thereto show "the significant time delay, in excess of thirty (30) days, during which Defendants failed to communicate with Plaintiff regarding the pending loan application, a requirement under Regulation B acknowledged by Defendants."[68] Thus, Plaintiff seems to assert that Defendants failed to comply with either notification period set forth in 12 C.F.R. § 1002.9(a)(3).

The Court agrees with Defendants' assertion that, "Plaintiff is disingenuously refusing to admit that the 30-day notice period does not apply, even though Plaintiff's own exhibit to the Amended Complaint reveals that Plaintiff's revenues far exceed $1 million, with Plaintiff going so far as to conceal that information by redacting it."[69] While Plaintiff asserts in its Opposition brief that, "Defendants had reasonable information regarding whether Plaintiff was entitled to the protections of Regulation B,"[70] and Plaintiff claims that, "the exhibit attached to the Motion, Plaintiff's application, clearly provides Defendants information as to Plaintiff's gross

---

[65] R. Doc. 30 at ¶ XVI(b); R. Doc. 41 at p. 10.
[66] R. Doc. 30 at ¶ XVII; R. Doc. 41 at p. 12.
[67] R. Doc. 41 at p. 13 (emphasis in original).
[68] *Id.* at p. 14.
[69] R. Doc. 44 at p. 4 (*citing* R. Doc. 30-4; R. Doc. 34-1 at p. 5; R. Doc. 35-3).
[70] R. Doc. 41 at p. 14.

revenues,"[71] Plaintiff repeatedly states that its gross revenue "is something that could have been disclosed in discovery."[72] More importantly, however, Plaintiff fails to address in its Opposition brief whether its gross revenue for the year preceding its loan application exceeded $1 million, even when confronted with an unredacted version of its loan application, the same application which it had attached as an exhibit to its First Supplemental and Amended Complaint.[73] The Court will not tolerate such gamesmanship.

The pleadings before the Court, specifically the unredacted version of Plaintiff's loan application submitted by Defendants,[74] show that Plaintiff had gross receipts of $765,297.10 in the second quarter of 2020, the fiscal year preceding its April 2, 2021 loan application.[75] According to an official interpretation of Regulation B issued by the CFPB, in determining which notification requirement set forth in § 1002.9(a)(3) applies to a business credit application, "a creditor may rely on the applicant's assertion about the revenue size of the business."[76] Based upon Plaintiff's representation regarding its gross revenue for just one quarter of 2020, the Court finds that Plaintiff's gross revenue for the entire fiscal year likely exceeded $1 million. The Court notes that Plaintiff seems to concede this point in its Opposition brief.[77]

---

[71] *Id.* at p. 13, n.19.
[72] *Id.* at p. 13, n.19 & pp. 14-15.
[73] *See, generally*, R. Doc. 41.
[74] R. Doc. 35-3 at p. 1.
[75] The Court notes that Defendants rely upon Plaintiff's gross revenue from the second quarter of 2019 in arguing that Plaintiff's gross revenue for the year preceding its loan application exceeded $1 million. R. Doc. 35-1 at p. 5 & n.2. Plaintiff, however, submitted its loan application in 2021. R. Doc. 35-3. Thus, Plaintiff's "preceding fiscal year," for purposes of 12 C.F.R. § 1002.9(a)(3), is 2020.
[76] 12 C.F.R. § Pt. 1002, Supp. I.
[77] R. Doc. 41 at pp. 14-15.

The Court therefore finds that the applicable notification requirement is 12 C.F.R. § 1002.9(a)(3)(ii), which required Defendants to notify Plaintiff, orally or in writing, of the action taken on Plaintiff's loan application "within a reasonable time" after receiving a completed application.[78]

Regulation B defines a "completed application" as "an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested," specifically including "any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral."[79] According to a Compliance Aid issued by the CFPB, which was last updated on May 6, 2020, "a PPP application that the creditor has submitted to the SBA for loan processing is not a 'completed application' under Regulation B until a creditor receives a loan number from the SBA or a response about the availability of funds."[80] While Plaintiff alleges in the Amended Complaint that, "*Defendants* assigned an 'Application number'" to its loan application,[81] there is no allegation that the SBA ever assigned a loan number to Plaintiff's loan application. Nor do any of the documents attached as exhibits to the Amended Complaint reflect that the SBA

---

[78] 12 C.F.R. § 1002.9(a)(3)(ii)(A). *See,* 12 C.F.R. § Pt. 1002, Supp. I ("A creditor subject to § 1002.9(a)(3)(ii)(A) is required to notify a business credit applicant, orally or in writing, of action taken on an application within a reasonable time of receiving a completed application.").
[79] 12 C.F.R. § 1002.2(f).
[80] "The Bureau's Equal Credit Opportunity Act and Regulation B FAQ's related to the COVID-19 Emergency" can be found at https://perma.cc/L4CW-4RKA. According to the CFPB's Policy Statement on Compliance Aids, "Compliance Aids present the requirements of existing rules and statutes in a manner that is useful for compliance professionals, other industry stakeholders, and the public." Policy Statement on Compliance Aids, 85 Fed. Reg. 4579-01 (Jan. 27, 2020).
[81] R. Doc. 30 at ¶ VIII (emphasis added).

assigned a loan number to Plaintiff's application. The Court notes that Defendants pointed this out in their Motion,[82] but Plaintiff failed to address the issue in its Opposition brief.[83] Thus, Plaintiff has failed to include any allegation in its Amended Complaint that it ever received a loan number from the SBA regarding Plaintiff's loan application.

The Court further finds that it is undisputed that Defendants first learned on May 4, 2021 that the funds allocated to them by the SBA had been depleted.[84] Relying upon the attachments to the Amended Complaint, Defendants argue that the applicable notification period either did not begin to run, or it began to run on May 4, 2021.[85] Plaintiff did not address Defendants' argument in its Opposition brief.[86] Instead, Plaintiff seems to assert that its loan application was submitted, and considered "completed" for purposes of Regulation B's notification requirement, on April 2, 2021, as Plaintiff contends that the Amended Complaint and the documents attached thereto "specifically note the significant time delay, in excess of thirty (30) days, during which Defendants failed to communicate with Plaintiff regarding the pending loan application, a requirement under Regulation B acknowledged by Defendants."[87] Plaintiff has failed to direct the Court to any legal authority supporting its position. Relying upon the clear language of Regulation B and the CFPB's Compliance Aid, the Court finds that Plaintiff's loan application was

---

[82] R. Doc. 35-1 at p. 7.
[83] *See, generally*, R. Doc. 41.
[84] R. Doc. 35-1 at p. 7 (*citing* R. Doc. 30-8); R. Doc. 30-8. *See, generally*, R. Docs. 30 & 41.
[85] R. Doc. 35-1 at p. 7 (*citing* R. Doc. 30-8).
[86] *See, generally*, R. Doc. 41.
[87] *Id*. at p. 14.

considered completed on May 4, 2021, when it received information about the availability of funds.

It is further undisputed that Defendants notified Plaintiff on May 13, 2021 that the SBA's funds had been depleted, a mere nine days after Plaintiff's loan application was considered completed for purposes of Regulation B.[88] The Court finds that Defendants notified Plaintiff of the action taken on its loan application "within a reasonable time" after receiving a completed application under 12 C.F.R. § 1002.9(a)(3)(ii)(A). Accordingly, even viewing the facts in the light most favorable to Plaintiff, which this Court is bound to do on a motion to dismiss, the Court finds that Plaintiff has failed to plausibly allege that Defendants violated the notification requirement set forth in 12 C.F.R. § 1002.9(a)(3). Defendants are therefore entitled to dismissal.

### B. Leave to amend.

Plaintiff has again requested leave to amend its complaint in the event that the Court finds that Plaintiff has failed to state a plausible claim for relief.[89] This Court will "freely give leave [to amend] when justice so requires,"[90] but leave to amend "is by no means automatic."[91] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and

---

[88] *See,* R. Doc. 30 at ¶ XII; R. Doc. 30-8; R. Doc. 35-1 at pp. 6 & 7 (*citing* R. Docs. 30-6 & 30-9).
[89] R. Doc. 41 at p. 15.
[90] Fed. R. Civ. P. 15(a).
[91] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

futility of the amendment."[92]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[93]

Applying those factors here, the Court denies Plaintiff's request to amend its complaint for a second time.  The Court finds that any amendment regarding Plaintiff's federal claim would likely be futile based upon the allegations in the Amended Complaint and the exhibits attached thereto, which show that Defendants complied with the notification requirement set forth in 12 C.F.R. § 1002.9(a)(3)(ii)(A).  Additionally, the Court previously granted Plaintiff's request for leave to amend its original Complaint to address these same deficiencies,[94] and Plaintiff's Amended Complaint still failed to state a plausible claim for relief under the Equal Credit Opportunity Act.  Indeed, the Amended Complaint was nearly a carbon copy of the original Complaint, and even included the state law claims that the Court previously dismissed with prejudice.  The Court, therefore, declines Plaintiff's request for an additional opportunity to amend its complaint, as the Fifth Circuit has made clear that a plaintiff should not be granted leave to amend after being afforded repeated opportunities to do so.[95]

---

[92] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[93] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).
[94] R. Doc. 27 at pp. 13-14.
[95] *See*, *Torch Liquidating Trust ex rel. Bridge Assoc. LLC v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (finding that plaintiff had ample opportunity to cure noted defects through a prior amendment and that "justice does not require allowing plaintiff additional opportunity to amend"); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that the Louisiana court had refused to allow a third amended complaint, stating that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right"); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding leave to amend was properly denied where the relator had previously filed two amended complaints).

## IV.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Dismiss First Supplemental and Amended Complaint for Damages, filed by IberiaBank Corporation and First Horizon Bank (collectively, "Defendants")[96] is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, February 21, 2024.

*[signature: Wendy B Vitter]*
**WENDY B. VITTER**
**United States District Judge**

---

[96] R. Doc. 35. Defendants assert that IberiaBank Corporation was improperly named as a defendant in this action, and that First Horizon Bank is the successor by merger to IberiaBank Corporation. *Id.* at p. 1, n.1. Defendants also assert that the proper defendant should be First Horizon Bank, successor by merger to IberiaBank Corporation. *Id.* Since both entities were named as defendants in the Amended Complaint, the Court will refer to them collectively as "Defendants."